NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAMUEL WILLIAM LEWIS | ) | No. C 06-1727 JF (PR) |
| Petitioner, | ) | |
| | ) | ORDER DENYING PETITION FOR |
| vs. | ) | WRIT OF HABEAS CORPUS |
| | ) | |
| BEN CURRY, Warden | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the California Board of Parole Hearings ("Board") denying him parole. The Court ordered Respondent[1] to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

---

[1] The proper named respondent in this action is Ben Curry, the acting Warden at the Correctional Training Facility in Soledad, where Petitioner is incarcerated. Stanley v. Cal. Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper respondent); Rule 2(a), 28 U.S.C. § 2254. Accordingly, the Clerk shall terminate A.P. KANE and substitute BEN CURRY as the Respondent.

**STATEMENT**

1

2      In 1988, following his conviction for second-degree murder, Petitioner was sentenced to a

3  term of fifteen years-to-life in state prison.  Resp. Ex. 1 (Judgment, <u>People v. Lewis</u>, Los Angeles

4  Superior Court, Case No. E-05524, (November 22, 1988)).  On February 15, 1988, Petitioner got

5  into an argument with Marcus Villegas over gang territory.  Resp. Ex. 2 (October 28, 2004 Parole

6  Consideration Hearing Transcript) at 8.  Petitioner challenged Villegas to a fight but was refused,

7  at which point Petitioner said that he would return with friends.  <u>Id</u>. at 8-9.  Later that evening,

8  Villegas and a number of teenagers were sitting on a front porch when Petitioner approached

9  them carrying a sawed-off shotgun.  <u>Id</u>. at 9.  Petitioner fired five or six rounds at the group,

10 hitting three victims.  Shivone Perry was shot in the back and killed.  Lavelle Bullard and April

11 Parcell also were shot.  <u>Id</u>.  The intended victim, Villegas, was not shot.  Petitioner and his

12 friend, Leon Milton, fled the scene and were pulled over by police  shortly thereafter.  <u>Id</u>. at 15.

13 Witnesses identified Petitioner as the shooter and Milton as his accomplice.  <u>Id</u>. at 9.  As part of a

14 plea agreement, a charge of first-degree murder was reduced to second-degree murder, and three

15 counts of attempted murder were dismissed.  Resp. Mem. at 2.  Petitioner entered a plea of <u>nolo</u>

16 <u>contendere</u>.[2]

17     Following a parole suitability hearing on October 28, 2004, the Board denied Petitioner

18 parole.  Petitioner filed a state habeas petition in the Los Angeles Superior Court, which was

19 denied on May 27, 2005.  The California Court of Appeal and the California Supreme Court

20 subsequently denied habeas relief.  The instant federal petition was filed on February 7, 2006 in

21 the United States District Court for the Central District of California.  The petition  was

22 transferred to this Court on March 7, 2006.

23 ///

24

---

25     [2]Respondent requests that this Court take judicial notice of the file in <u>Lewis v. Solis,</u> Case
26 No. C04-2152 JF (PR), because Respondent was unable to obtain exhibits five and six from the
   Los Angeles Superior Court.  Petitioner filed a copy of the October 31, 1988 plea hearing
27 transcript as Exhibit 1 to his Traverse.  Accordingly, as it appears there is no dispute as to these
   records, the Court will take judicial notice of the Exhibits filed in Case no. C 04-2152 JF (PR)
28 pursuant to Federal Rule of Civil Procedure 201.

1

**DISCUSSION**

2

**A.    Standard of Review**

3           This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in

4    custody pursuant to the judgment of a State court only on the ground that he is in custody in

5    violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The

6    petition may not be granted with respect to any claim adjudicated on the merits in state court

7    unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to,

8    or involved an unreasonable application of, clearly established federal law, as determined by the

9    Supreme Court of the United States; or (2) resulted in a decision that was based on an

10   unreasonable determination of the facts in light of the evidence presented in the State court

11   proceeding." 28 U.S.C. § 2254(d).

12          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

13   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

14   the state court decides a case differently than [the] Court has on a set of materially

15   indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000).  "Under the

16   'reasonable application clause,' a federal habeas court may grant the writ if the state court

17   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

18   applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court

19   may not issue the writ simply because that court concludes in its independent judgment that the

20   relevant state-court decision applied clearly established federal law erroneously or incorrectly.

21   Rather, that application must also be unreasonable."  Id. at 411.

22          "[A] federal habeas court making the 'unreasonable application' inquiry should ask

23   whether the state court's application of clearly established federal law was 'objectively

24   unreasonable.'"  Id. at 409.  In examining whether the state court decision was objectively

25   unreasonable, the inquiry may require analysis of the state court's method as well as its result.

26   Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The standard for "objectively

27   unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same.  The gloss

28   of error fails to give proper deference to state courts by conflating error (even clear error) with

1  unreasonableness." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).

2     A federal habeas court may grant the writ if it concludes that the state court's adjudication

3  of the claim "results in a decision that was based on an unreasonable determination of the facts in

4  light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2).  The

5  court must presume correct any determination of a factual issue made by a state court unless the

6  petitioner rebuts the presumption of correctness by clear and convincing evidence.  28. U.S.C. §

7  2254(e)(1).

8     Where, as here, the highest state court to consider the petitioner's claims issued a

9  summary opinion which does not explain the rationale of its decision, federal review under §

10  2254(d) is of the last state court opinion to reach the merits.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S.

11  797, 801-06 (1991); <u>Bains v. Cambra</u>, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this

12  case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the

13  Los Angeles Superior Court.  Resp. Ex. 8 (<u>In re Samuel Lewis on Habeas Corpus</u>, Case No.

14  BH003321, May 27, 2005).

15  **B.     Subject Matter Jurisdiction**

16     Respondent contends initially that this Court lacks subject matter jurisdiction over the

17  instant petition because California inmates have no federally-protected due process right in

18  parole release.  Resp. Mem. at 4.  Respondent acknowledges the Ninth Circuit's decision in <u>Sass</u>

19  <u>v. California Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006), but preserves this argument

20  because a petition for rehearing was pending at the time Respondent filed the answer in the

21  instant case.  Resp. Mem. at 4.

22     Although a convicted person has no inherent or constitutional right to early release on

23  parole, a state's statutory parole scheme may create "a presumption that parole release will be

24  granted" if it uses mandatory language.  <u>Greenholtz v. Inmates of Nebraska Penal & Corr.</u>

25  <u>Complex</u>, 442 U.S. 1, 12 (1979).  The Ninth Circuit made clear in <u>Sass</u> that because California's

26  parole statute uses mandatory language, "California inmates continue to have a liberty interest in

27  parole after <u>In re Dannenberg</u>, 34 Cal. 4th 1061 (2005)."  <u>Sass</u>, 461 F.3d at 1125 (finding that

28  district court misread <u>Dannenberg</u> which did not hold that there is no constitutionally protected

1   liberty interest in parole – but upholding denial of petition on other grounds).  Because

2   controlling Ninth Circuit authority holds that Petitioner has a constitutionally protected liberty

3   interest in release on parole, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §

4   2254 to decide whether Petitioner's federal constitutional rights were violated by the Board's

5   determination that Petitioner was not suitable for parole.

6   **C.   Analysis**

7         1.   <u>Petitioner's Plea Agreement Was Not Violated</u>

8         Petitioner claims that the Board and the Los Angeles Superior Court violated his right to

9   due process by breaching the terms of his plea agreement.  Petition at 5.  Specifically, Petitioner

10   contends that "the state court has failed to properly apply California contract law when

11   interpreting [his] plea agreement," by violating Petitioner's expectation in entering his plea that

12   the circumstances of his commitment offense, namely the fact that there were multiple victims,

13   would not be used against him at his parole hearing.  Traverse at 10-11.

14         Respondent initially argues that Petitioner's claim that his plea agreement was violated

15   should be "dismissed because [the] claims were rejected by this Court in an earlier case."  Resp.

16   Mem. at 5.  Respondent claims that Petitioner's claim is not based on new facts or law, and

17   Petitioner did not receive "an order authorizing the filing of this successive claim from the Ninth

18   Circuit."  <u>Id</u>.  Because the Court concludes that Petitioner's claim is without merit, in any event

19   the Court will assume without deciding that the instant claim is not barred as second or

20   successive pursuant to 28 U.S.C. § 2244(b)(1).

21         "[W]hen a plea rests in any significant degree on a promise or agreement of the

22   prosecutor, so that it can be said to be part of the inducement or consideration, such promise

23   must be fulfilled."  <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).  Plea agreements are

24   contractual in nature and subject to contract law standards of interpretation.  <u>In re Ellis</u>, 356 F.3d

25   1198, 1207 (9th Cir. 2004); <u>United States v. Kramer</u>, 781 F.2d 1380, 1387 (9th Cir. 1986).  In

26   determining whether a plea agreement has been broken, courts look to what was reasonably

27   understood by the parties to be the terms of the agreement.  <u>Brown v. Poole</u>, 337 F.3d 1155, 1159

28   (9th Cir. 2006); <u>United States v. Arnett</u>, 628 F.2d 1162, 1164 (9th Cir. 1979).  "'If the terms of

1    the plea agreement have a clear and unambiguous meaning, then [the] court will not look to

2    extrinsic evidence to determine their meaning'" United States v. Trapp, 257 F.3d 1053, 1056 (9th

3    Cir. 2001) (quoting United States v. Clark, 218 F.3d 1092, 1095 (9th Cir. 2000)).  Under

4    California law, a nolo contendere plea removes every issue of fact from the case and authorizes

5    the entry of a conviction.  United States v. Verduzco, 330 F.3d 1182, 1185 (9th Cir. 2003).

6    California Penal Code section 1016 provides:

7              *[A] plea of nolo contendere shall be considered the same as a plea*
              *of guilty* and [] upon a plea of nolo contendere, the court shall find
8              the defendant guilty. *The legal effect of such a plea, to a crime*
              *punishable as a felony, shall be the same as that of a plea of guilty*
9              *for all purposes.*

10   Cal. Pen. Code § 1016 (emphasis added).

11         The Los Angeles Superior Court rejected Petitioner's claim that the Board's denial of

12   parole violated his plea agreement.  Resp. Ex. 8 (In re Samuel Lewis on Habeas Corpus, Case

13   No. BH003321, May 27, 2005) at 2.  The court found that "Petitioner agreed to an indeterminate

14   term of fifteen years to *life*," and that Petitioner did "not allege the District Attorney's office

15   promised [Petitioner] would only serve the minimum term or would not oppose parole."  Id.

16   (emphasis in original).  The court noted that "the circumstances of the crime are more than the

17   minimum necessary to sustain a conviction for second-degree murder."  Id. (citing In re

18   Rosenkrantz, 29 Cal.4th 616, 683 (2002)).

19         Here, Petitioner's plea of nolo contendere removed all questions of fact from Petitioner's

20   case and authorized the trial court to enter a judgment against him.  Verduzco, 330 F.3d at 1185.

21   The terms of the plea provided that the murder Petitioner was charged with would be reduced

22   from first-degree to second-degree murder, and three counts of attempted murder would be

23   dismissed.  Resp. Mem. at 2.  Based on his plea, Petitioner reasonably should have expected that

24   the underlying facts of his crime would be reviewed by the Board.  Before Petitioner entered his

25   plea, the trial court informed him that "if you were to plead no contest...it would be treated the

26   same as a guilty plea...I am going to assume that you are guilty of murdering another human

27   being."  Traverse Ex. 1 ( Plea Hearing Transcript, People v. Lewis, No. A964645, Los Angeles

28   Superior Court, October 31, 1988 ) at 19.

1     There is no indication in the record that the prosecutor and Petitioner agreed that as a

2     condition of Petitioner's plea agreement, the factual circumstances of Petitioner's commitment

3     offense would not be used against Petitioner in any future parole hearings.  Thus, Petitioner's

4     plea did not "rest[] in any significant degree on a promise or agreement of the prosecutor" such

5     "that it can be said to be a part of the inducement or consideration" of the plea agreement.

6     Santobello, 404 U.S. at 262.  Nor could such a promise properly have been made, since the

7     Board was not a party to the agreement.  Accordingly, the Court concludes that the state court's

8     determination was not contrary to, or an unreasonable application of, clearly established federal

9     law, nor was it based on an unreasonable determination of the facts in light of the evidence

10    presented.  28 U.S.C. § 2254(d)(1), (2).

11             2.      The Board's Decision was Based on "Some Evidence"

12            Next, Petitioner claims that his constitutional rights were violated because "[t]he Board's

13    decision was arbitrary and capricious; there was no evidence to support the decision; the findings

14    are not in the regulatory code which govern the board; and were not admissions of facts in the

15    plea contract."  Petition at 5.

16            A parole board's decision must be supported by "some evidence" to satisfy the

17    requirements of due process.  Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for

18    disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).  The

19    standard of "some evidence" is met if there was some evidence from which the conclusion of the

20    administrative tribunal could be deduced.  See Hill, 472 U.S. at 455.  An examination of the

21    entire record is not required, nor is an independent assessment of the credibility of witnesses nor

22    weighing of the evidence.  Id.  The relevant question is whether there is any evidence in the

23    record that could support the conclusion reached by the Board.  See id.  Accordingly, "if the

24    Board's determination of parole suitability is to satisfy due process there must be some evidence,

25    with some indicia of reliability, to support the decision."  Rosas v. Nielsen, 428 F.3d 1229, 1232

26    (9th Cir. 2005) (citing McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002)).

27            In assessing whether or not there is "some evidence" supporting the Board's denial of

28    parole, this Court must consider the regulations that guide the Board in making its parole

1   suitability determinations.  California Code of Regulations, title 15, section 2402(a) states that

2   "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.

3   Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

4   parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

5   society if released from prison."  Cal. Code of Regs., tit. 15, § 2402(a).  The regulations direct

6   the Board to consider "all relevant, reliable information available."  Cal. Code of Regs., tit. 15, §

7   2402(b).  Further, the regulations enumerate various circumstances tending to indicate whether or

8   not an inmate is suitable for parole.  Cal. Code of Regs., tit. 15, § 2402(c)-(d).[3]

9       California law makes clear that the "'findings that are necessary to deem a prisoner

10  unsuitable for parole,' are not that a particular factor or factors indicating unsuitability exist, but

11  that a prisoner's release will unreasonably endanger public safety."  Hayward v. Marshall, 512

12  F.3d 536, 543 (9th Cir. 2008)(citations omitted).  Accordingly, the test is not whether some

13  evidence supports the reasons cited for denying parole, but whether some evidence indicates a

14  parolee's release unreasonably endangers public safety.  "Some evidence of the existence of a

15  particular factor does not necessarily equate to some evidence the parolee's release unreasonably

16  endangers public safety."  Id. (citations omitted) (concluding that factual findings relied upon by

17  governor had no evidentiary support in the record to support a determination that petitioner's

18  release would unreasonably endanger public safety and therefore Governor's reversal denied

19  petitioner due process).

20      In denying parole in the instant case, the Board considered multiple factors.  See generally

21  Resp. Ex. 2 (October 28, 2004 Parole Consideration Hearing Transcript).  It made reference to

22

23      [3]The circumstances tending to show an inmate's unsuitability are: (1) the commitment
    offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record
24  of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors
    such as a "lengthy history of severe mental problems related to the offense;" and (6) prison
25  misconduct.  Cal. Code of Regs., tit. 15, § 2402(c).  The circumstances tending to show
    suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4)
26  commitment offense was committed as a result of stress which built up over time; (5) Battered
    Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of
27  recidivism; (8) plans for future including development of marketable skills; and (9) institutional
    activities that indicate ability to function within the law.  Cal. Code of Regs., tit. 15, § 2402(d).
28

1    Petitioner's prior criminal history, which included a juvenile criminal record. Id. at 16-17.[4] The

2    Board also considered the objection to Petitioner's release by the Los Angeles County District

3    Attorney's Office. Id. at 36. The Board found that Petitioner's commitment offense was "carried

4    out in an especially violent and brutal manner" and that "[m]ultiple victims were attacked." Id.

5    at 47. The Board observed that after his friends loaded the sawed-off shotgun used in the crime,

6    Petitioner fired five or six rounds at a group of five teenagers sitting on a porch from a distance

7    of approximately twenty feet, and then fled the scene. Id. at 48.

8          The Board noted that Petitioner had obtained his A.A. degree in 2002. Id. at 19. It also

9    commended Petitioner for being "disciplinary free" for the past five years while in prison, and

10   also for completing independent study courses in both federal and California income tax

11   preparation in 2002. Id. at 22. The Board also recognized Petitioner's accomplishments in self-

12   help programs and other academic pursuits. It considered the statement of Petitioner's

13   Correctional Counselor that Petitioner "would probably pose a low degree of threat to the public

14   at this time if released," and the evaluation of the Staff Psychologist that Petitioner's "risk

15   potential in the community setting [was] documented as being low...and that currently [Petitioner

16   has] a risk potential no greater than the average citizen, and [Petitioner is] a suitable candidate

17   for release consideration." Id. at 27. The Board also observed that Petitioner had plans for work

18   and a residence upon release. Id. at 28-31. Nonetheless, the Board concluded that "these

19   positive aspects of [Petitioner's] behavior do not outweigh the factors of unsuitability." Id. at 49.

20         The superior court rejected Petitioner's argument that the Board's action denied Petitioner

21   due process. Resp. Ex. 8 at 2. The superior court based its decision on the fact that "the

22   commitment offense involved multiple victims," and that "[a]n inmate may be unsuitable for

23   parole if multiple victims were attacked...in the same or separate incidents." Id. (citing Cal. Code

24   Regs., tit. 15, §2402(c)(1)(A)). The superior court found that the Board "may properly consider

25   all of the circumstances surrounding the commitment offense," and concluded that "the

26

27         [4] In 1987, Petitioner was arrested for carrying a concealed firearm. On February 5, 1988,
28   Petitioner was arrested for carrying a concealed weapon in a vehicle.

1    circumstances of the [commitment offense] are more than the minimum necessary to sustain a

2    conviction for second-degree murder." Id. (citing In re Rosenkrantz, 29 Cal.4th 616, 683

3    (2002)).

4           The Supreme Court has held that due process is satisfied if: (1) the state affords an inmate

5    an opportunity to be heard in connection with the decision whether to release him to parole; and

6    (2) when parole is denied, it informs the inmate in what respects he falls short of qualifying for

7    parole. Greenholtz, 442 U.S. at 16.  The full panoply of rights due a defendant in a criminal

8    proceeding are not constitutionally mandated in a parole proceeding because the setting of a

9    parole term is not part of a criminal prosecution. Pedro v. Oregon Parole Bd., 825 F.2d 1396,

10   1399 (9th Cir. 1987).  Additionally, the evidence underlying the Board's decision must have

11   some indicia of reliability. McQuillion, 306 F.3d at 904.  A relevant factor in this latter inquiry

12   is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the

13   board. Pedro, 825 F.2d at 1399.

14          Here, the Board held a full hearing in October 2004 at which both Petitioner and his

15   counsel were afforded the opportunity to participate in the Board's consideration and discussion

16   of the circumstances relevant to Petitioner's suitability for parole and present evidence favorable

17   to his position. See generally Resp. Ex. 2.  Additionally, the Board provided Petitioner with its

18   reasons for the denial of parole and provided him with a copy of the written decision. Id. at 47-

19   50.  Thus, the Board afforded Petitioner the full panoply of rights due in his parole proceeding.

20          The Court concludes that although Petitioner presented substantial evidence supporting

21   parole, there was "some evidence" to support the Board's decision denying parole, including not

22   only the circumstances of the commitment offense but also on other relevant considerations,

23   including the fact that the offense was "carried out in an especially violent and brutal manner,"

24   id. at 47, Petitioner's prior criminal history and the opposition of the Los Angeles County District

25   Attorney's Office.  Because some evidence exists to support its determination of parole

26   unsuitability, the Board's decision complied with the requirements of due process.

27   ///

28   ///

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lewis727osc                    10

1    Accordingly, the Court concludes that the state court's determination was not contrary to,

2   or an unreasonable application of, clearly established federal law, nor was it based on an

3   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

4   2254(d)(1), (2).

5                                           **CONCLUSION**

6           The Court concludes that Petitioner has failed to show any violation of his federal

7   constitutional rights in the underlying state court proceedings and parole hearing.  Accordingly,

8   the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the

9   file.

10          IT IS SO ORDERED.

11   DATED: _____5/15/08_____

12                                           JEREMY FOGEL
                                            United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28